**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JUAN GARCIA-SANCHO, as Administrator
of the Estate of Diana Veloz,

        Plaintiff,

        v.

UNITED STATES OF AMERICA and
PRIMECARE COMMUNITY HEALTH INC.,

        Defendants.

No. 1:23-CV-03183

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

On November 14, 2019, Diana Veloz sought medical care at PrimeCare West Town Health Center. R. 52, Third Am. Compl. ¶¶ 2, 7.[1] She was discharged from the Center that same day—but then passed away that very same evening. *Id.* ¶ 14. Eventually, her husband, Juan Garcia-Sancho, filed this medical-malpractice case in May 2023 against PrimeCare Community Health, Inc. (which operates the Center). R. 1, Compl. The procedural history of this case will be discussed in greater detail below; for now, it is enough to say that the United States has certified that PrimeCare was acting within the scope of federal employment.[2] *See* R. 55, Def.'s Notice of Substitution; R. 55-1, Cert. Now, Garcia-Sancho has moved to strike the certification and to

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]The Court has subject matter jurisdiction over claims against the United States under 28 U.S.C. § 1346(b)(1). As explained in the Opinion, because the United States is the proper defendant, the state law claims against PrimeCare must be dismissed in favor of a sole claim against the United States.

challenge the assertion of federal employment. R. 61, Pl.'s Mot. to Strike. But because PrimeCare was operating under a specific type of federal-grant agreement, the Center was indeed acting within the scope of federal employment. So the motion to strike the scope certification is denied.

## I. Background

On the morning of November 14, 2019, Diana Veloz visited PrimeCare West Town Health Center to seek medical treatment for severe nausea, loss of sensation in her hands, a racing heart rate, and weakness. Third Am. Compl. ¶ 7. She was seen by a resident physician, who diagnosed her with an upper respiratory infection and provided instructions to take Tylenol. *Id.* ¶ 8. The complaint alleges that the supervising physician neither personally examined Veloz nor reviewed the resident physician's diagnosis and treatment plan before Veloz's discharge. *Id.* ¶ 12. Veloz died later that night from lymphocytic myocarditis. *Id.* ¶ 14.

In the first iteration of this lawsuit, Garcia-Sancho initially filed, in state court, a medical-malpractice suit as Administrator of Veloz's estate against the resident physician, the supervising physician, and PrimeCare. *See* R. 1, Notice of Removal Exh. A, State Compl., *Garcia-Sancho v. Seniutkin*, Case No. 1:22-cv-04462 (N.D. Ill. Aug. 23, 2022). The United States removed the case to federal court and substituted as defendant in place of PrimeCare under 42 U.S.C § 233. R. 1, Notice of Removal ¶¶ 2, 4, *Garcia-Sancho v. Seniutkin*, Case No. 1:22-cv-04462 (N.D. Ill. Aug. 23, 2022). The United States then moved to dismiss for failure to exhaust administrative

2

remedies. *See* R. 3, Def.'s Mot., *Garcia-Sancho v. Seniutkin*, Case No. 1:22-cv-04462 (N.D. Ill. Aug. 24, 2022). The Court dismissed the case without prejudice for lack of exhaustion as to the claims against PrimeCare and remanded the case to state court as to the claims against the physician-defendants.[3] R. 12, Am. Judgment, *Garcia-Sancho v. Seniutkin*, Case No. 1:22-cv-04462 (N.D. Ill. Nov. 4, 2022).

After Garcia-Sancho exhausted administrative remedies, he brought a second suit against PrimeCare in May 2023—this time in federal court. *See* Compl. Eventually, to litigate whether PrimeCare was acting within the scope of federal employment, the Court allowed Garcia-Sancho to serve discovery requests on the government on that topic. R. 45, 07/08/2024 Minute Entry. After discovery finished, in October 2024, Garcia-Sancho filed a Third Amended Complaint alleging that PrimeCare was negligent when treating Veloz. Third Am. Compl. ¶¶ 30–36.

The United States then filed a notice of substitution and certification setting forth the Attorney General's finding that PrimeCare was acting within the scope of its deemed federal employment under 42 U.S.C. § 233(c) when Veloz received treatment. *See* Def.'s Notice of Substitution; Cert. The scope certification, which references the complaint that Garcia-Sancho initially filed in the Circuit Court of Cook County

---

[3]The physician-defendants did not qualify as contractors entitled to coverage under the Federal Tort Claims Act because 42 U.S.C. § 233 limits coverage healthcare entities that have been deemed federal employees, as well as their employees and contractors, and the physician-defendants did not directly work for or contract with PrimeCare. *See* 42 U.S.C. § 233(g)(1)(A). Garcia-Sancho settled his medical malpractice claims against the physician-defendants with Presence Saints Mary and Elizabeth Medical Center (which the parties refer to as Presence), which employed the physicians. Def.'s Resp. Br. at 10 n.1; *see also* R. 21-1, Order Approving Settlement and Distribution, *Garcia-Sancho v. Presence Chicago Hospitals Network*, Case No. 2021L010619 (Cir. Ct. of Cook Cnty. Jan. 18, 2023).

in November 2021, stated that based on available information, "at the relevant times, Primecare Community Health, Inc., was a private entity receiving grant money from the Public Health Service pursuant to 42 U.S.C. § 254b and was deemed to be an employee of the Public Health Service pursuant to 42 U.S.C. § 233." Cert. The scope certification also stated that "Primecare Community Health, Inc., was acting within the scope of its deemed federal employment with respect to any incidents referred to in the complaint" and that PrimeCare "is deemed to be [an] employee of the United States pursuant to 42 U.S.C. § 233, for federal statutory tort purposes only." *Id*. The scope certification is dated August 1, 2022. *Id*.

Now Garcia-Sancho moves to strike the United States' certification and its assertion that PrimeCare was acting within the scope of federal employment when Veloz received treatment at the PrimeCare West Town Health Center. Pl.'s Mot. to Strike. The United States argues that PrimeCare provided medical care under an agreement with the federal government, and PrimeCare has joined the United States' response to the motion to strike. *See* R. 66, PrimeCare Joinder.

## II. Legal Standard

A federal court may review the Attorney General's certification on the scope of employment. *De Martinez v. Lamagno*, 515 U.S. 417, 436–37 (1995). "[W]hen a review of the scope certification is requested … the district court should give *de novo* review to determine whether the certification was proper." *Hamrick v. Franklin*, 931 F.2d 1209, 1211 (7th Cir. 1991). But after the certification is issued, plaintiffs "have the

4

burden of showing that the defendants' conduct was not within the scope of employment." *Id.* "A plaintiff may not proceed against a federal employee in his individual capacity until the plaintiff has successfully challenged the United States' scope of employment determination." *Hasbun v. United States,* 2010 WL 5150986, at *2 (N.D. Ill. Dec. 10, 2010). In evaluating the challenge to the scope certification, the Court will consider the documents that the parties have presented on the relationship between PrimeCare and the U. S. Public Health Service.

### III. Analysis

At issue is whether (1) the United States properly substituted itself into this suit on behalf of PrimeCare by filing a scope certification under 42 U.S.C. § 233(c); and if so, (2) whether PrimeCare was acting within the scope of its employment when the alleged medical malpractice occurred.

### A. Statutory Background

The U.S. Public Health Service includes federal health care workers who are direct employees of the federal government. Like many other federal employees, those health care workers are subject to suits arising out of their federal employment in only limited circumstances, and only under the Federal Tort Claims Act. 42 U.S.C. § 233(a). In general, the Public Health Service Act "grants absolute immunity to [Public Health Service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui v. Castaneda,* 559 U.S. 799, 806 (2010). But under the Federal Tort Claims Act, patients may sue the United States—rather

5

than the employee—for "personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions …," 42 U.S.C. § 233(a); *see Hui*, 559 U.S. at 806 (explaining that 42 U.S.C. § 233(a) "limits recovery for such conduct to suits against the United States").

In 1992, Congress amended the Public Health Service Act by enacting the Federally Supported Health Centers Assistance Act, which "allows public or non-profit private entities receiving funds under federal health grant programs (as well as their officers, employees, and contractors) to be 'deemed' [Public Health Service] entities or employees, thereby falling within the liability limitations contained in § 233(a)." *Evans v. United States*, 132 F.4th 473, 478 (7th Cir. 2025) (quoting 42 U.S.C. § 233(g)(1) and citing 42 U.S.C. § 254b). The Secretary of Health and Human Services is authorized to "deem" the grant-receiving entities to be Public Health Service entities or employees, and thus enjoy the tort-limitation protections of the Federal Tort Claims Act. *See* 42 U.S.C. § 233(a), (g)(1), (g)(4). When a plaintiff sues a healthcare entity acting within the scope of its federal employment, federal law provides that the case shall be removed to federal court and that it should proceed only against the federal government:

> Upon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of Title 28 and all references thereto.

42 U.S.C. § 233(c). If the court determines that the Federal Tort Claims Act does not apply—that is, if the employee was not acting withing the scope of federal employment—then the case must be remanded to the state court. *Id.*

The text of Section 233(c) of Title 42 is similar to the removal provision in the Federal Employees Liability Reform and Tort Compensation Act of 1988, better known as the Westfall Act, 28 U.S.C. § 2679(d)(2).[4] But there is a crucial difference between the two statutes—Section 2679(d) contains a substitution-and-scope certification provision for cases brought against federal employees in *federal* court:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim *in a United States district court* shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1) (emphasis added). In contrast, Section § 233 does not include an explicit substitution-and-scope certification provision for cases brought in federal court.

---

[4]In full, Section 2679(d)(2) says: "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such a claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal."

7

## B. Substitution under Section 233(c)

In this case, the United States filed a notice of substitution-and-scope certification under 42 U.S.C. § 233(c). Def.'s Notice of Substitution ¶ 3. Garcia-Sancho argues that the scope certification must be stricken because Section 233(c) is not the proper statutory authority for the certification. Pl.'s Mot. to Strike at 5–6. Instead, he argues that the government should have filed the scope certification and moved to substitute under 28 U.S.C. § 2679(d)(1). *Id.* at 6–7; R. 69, Pl.'s Reply at 4–6. The United States responds that a motion to substitute under 28 U.S.C. § 2679(d)(1) is not necessary for substitution under the Supreme Court's decision in *Hui v. Castaneda*, 559 U.S. at 811. R. 65, Def.'s Resp. Br. at 11.

In the first instance, Garcia-Sancho is right: the scope certification filed by the United States incorrectly invoked Section 233(c), which applies only to cases *removed* to federal court from state court. In the statute's words, the subsection only applies when a "civil action or proceeding commenced in a State court shall be *removed* … to the district court of the United States[.]" 42 U.S.C. § 233(c) (emphasis added). But this case (in its second, current iteration) was filed directly in district court. *See* Compl. So Section 233(c) does not apply.

This does not, however, ultimately require the Attorney General to proceed with a certification under the Westfall Act, 28 U.S.C. § 2679(d)(1). *See* Pl.'s Mot. to Strike at 6–7; Pl.'s Reply at 4–6. In *Hui v. Castaneda*, the Supreme Court explained that Section 233(a)'s funneling of suits against Public Health Service employees into the Federal Tort Claims Act framework was self-executing. 559 U.S. at 811.

8

Remember that Section 233(a), which is entitled "Exclusiveness of remedy," declares—with no reference to a certification at all—that the Federal Tort Claims Act is the exclusive remedy "for damage for personal injury … resulting from the performance of medical … functions" by Public Health Service employees acting within the scope of employment. 42 U.S.C. § 233(a). This tort-suit-limiting provision creates no certification requirement at all. Not surprisingly, then, *Hui* characterized a scope certification—whether under Section 233(a) or under the Westfall Act—as a matter of convenience, not necessity: "while scope certification may provide a convenient mechanism for establishing that the alleged misconduct occurred within the scope of the employee's duties, the procedure authorized by § 2679(d) is *not necessary* to effect substitution of the United States." *Hui*, 559 U.S. at 811 (emphasis added). Put another way, even though the United States here mistakenly filed a scope certification under Section 233(c), the United States can substitute itself into this case—which was filed directly in federal court—*without filing a scope certification at all*. For that reason, the Court holds that it is not necessary for the United States to have filed a scope certification at all—much less under the Westfall Act, 28 U.S.C. § 2679(d)(1).[5] Garcia-Sancho's request to strike the certification on procedural grounds is denied.

---

[5]Garcia-Sancho also argues that the scope certification must be stricken because it does not state that the government reviewed and determined that PrimeCare was acting within the scope of federal employment as to the allegations in the Third Amended Complaint; rather, the scope certification says that the government reviewed the original complaint filed in state court. Pl.'s Mot to Strike at 5. The government argues that it did not need to specifically reference the Third Amended Complaint "because the factual allegations have not changed since the original scope certification was made" at the time the original case was removed, and even if the certification should have referenced the operative complaint, it is harmless error that it did not. Def.'s Resp. Br. at 11. Because the Court concludes that the

### C. Scope of Employment

With the threshold procedural challenge rejected, the next question is whether PrimeCare was acting within the scope of federal employment when Veloz received treatment on November 14, 2019. Garcia-Sancho argues that PrimeCare acted outside the scope of federal employment because its resident physician engaged in the unauthorized practice of medicine under Illinois. Pl.'s Mot. to Strike at 8–9. The premise of the contention is that the resident independently treated Veloz without supervision or review by a supervising physician. *Id.* Garcia-Sancho asserts that this alleged unauthorized practice of medicine was outside of PrimeCare's scope of federal employment. *Id.* at 9. The United States responds that the relevant inquiry is whether PrimeCare was acting within the *scope* of its healthcare-center grant at the time of Veloz's treatment, not whether PrimeCare was negligent in supervising the resident. Def.'s Resp. Br. at 6.

When evaluating whether a federal employee was acting within the scope of employment for purposes of the Federal Tort Claims Act, federal courts apply the governing state law. *Taboas v. Mlynczak*, 149 F.3d 576, 582 (7th Cir. 1998); *see also Snodgrass v. Jones*, 957 F.2d 482, 484 (7th Cir. 1992). Under Illinois law, although "[n]o precise definition has been accorded the term 'scope of employment,'" *Sunseri v. Puccia*, 422 N.E.2d 925, 930 (Ill. App. Ct. 1981), "broad criteria have been enunciated:

scope certification is not necessary for the United States to substitute itself in this case, there is no need to decide the dispute over the reference to the original complaint.

'(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master,'" *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989) (quoting Restatement (Second) of Agency § 228 (1958)). None of these factors inquire into whether the employee's conduct was negligent or tortious; instead, the factors examine the *type* and *purpose* of the conduct. PrimeCare's provision of healthcare services to Veloz under the federal grant satisfies each of these factors.

First, the United States employed PrimeCare to "provide[ ] integrated *primary medical*, behavioral, oral health care, substance use disorder and medication-assisted treatment, as well as enabling/supportive services to the medically underserved and impoverished areas of the northwest and west sides of Chicago." R. 65-4, Def.'s Resp. Br. Exh. D, PrimeCare Grant App. at 4 (emphasis added). That broad set of healthcare services funded by the grant—including "primary medical" care—encompassed what services PrimeCare was providing when Veloz presented at the West Town Health Center with her symptoms. Even more specifically, PrimeCare's use of *resident* physicians to provide medical services and its affiliation with Presence's family medicine residency program was also outlined in the grant application. *See* PrimeCare Grant App. at 5 ("To ensure patients have access to care, required services are either provided directly by PrimeCare employees or by another provider whom PrimeCare has a written arrangement or referral agreement with. … PrimeCare has an agreement with Presence Saints Mary and Elizabeth Medical Center … where

11

patients can receive these services."); *id.* at 10 ("PrimeCare works with [Presence] on its *residency* training program in family medicine and obstetrics; …. Residents see PrimeCare patients in addition to providing care to patients through [Presence]." (emphasis added)).

Second, there is no real dispute that PrimeCare's provision of health services to Veloz in November 2019 was within the authorized time and geographic parameters of the federal grant. R. 65-3, Def.'s Resp. Br. Exh. C, Deeming Notice at 2; PrimeCare Grant App. at 7. PrimeCare's treatment of Veloz arose out of its grant-supported activity, which was to provide "primary medical … care … to the medically underserved and impoverished areas of the northwest and west sides of Chicago," "serving all regardless of ability to pay or insurance status." PrimeCare Grant App. at 4. The West Town Health Center, where Veloz received treatment, is disclosed as a service site in the grant application. *Id.* at 12.

Third, PrimeCare's actions—treating and diagnosing Veloz's symptoms—were taken, "at least in part, by a purpose to serve" its grant obligations to the United States. *Pyne*, 543 N.E.2d at 1308 (cleaned up); PrimeCare Grant App. at 5 ("To ensure patients have access to care, required services are either provided directly by PrimeCare employees or by another provider whom PrimeCare has a written agreement or referral arrangement with."); *id.* at 10 ("PrimeCare works with [Presence] on its residency training program in family medicine and obstetrics; …. Residents see PrimeCare patients in addition to providing care to patients through [Presence]"). Indeed, Garcia-Sancho does not offer any other purpose that PrimeCare would be fulfilling in

12

providing healthcare services under the grant. Instead, as noted earlier, Garcia-San-cho's sole argument is to view the treatment and alleged misdiagnosis by the resident physician as an unlawful practice of medicine. Under Illinois law, that is the wrong lens with which to examine whether an employee's conduct falls within the scope of employment. *See Pyne*, 543 N.E.2d at 1308.

Against all this, Garcia-Sancho submits records of the relationship between PrimeCare and Presence, apparently relying on the fact that the resident physician was not a direct PrimeCare employee and instead worked for Presence. *See* R. 61-1, Pl.'s Mot. to Strike Exh. A. (attaching Affiliation Agreement, Professional Services Agreement, and Graduate Medical Education Rotation Agreement). But federal law expressly authorizes grant recipients, in providing healthcare services, to contract with or form cooperative agreements with other healthcare providers. *See* 42 U.S.C. § 254b(a)(1)(A) (defining "health center" as "an entity that serves a population that is medically underserved … by providing, either through the staff and supporting re-sources of the center or through contracts or cooperative arrangements … required primary health services"); 42 U.S.C. § 254b(b)(1)(A)(i)(I) (defining "required primary health services" as "basic health services which … shall consist of … health services related to family medicine"). And, as explained earlier, PrimeCare explicitly invoked this authority to work with Presence resident physicians. *See* PrimeCare Grant App. at 5 ("To ensure patients have access to care, required services are either provided directly by PrimeCare employees or by another provider whom PrimeCare has a writ-ten arrangement or referral agreement with. … PrimeCare has an agreement with

Presence Saints Mary and Elizabeth Medical Center … where patients can receive these services."); *id.* at 10 ("PrimeCare works with [Presence] on its *residency* training program in family medicine and obstetrics; …. Residents see PrimeCare patients in addition to providing care to patients through [Presence]." (emphasis added)).

The final argument offered by Garcia-Sancho is that the United States supposedly admitted, in its discovery responses, that PrimeCare had no obligation to supervise the resident and supervising physicians pursuant to PrimeCare's status as a federal employee. Pl.'s Mot. to Strike at 7–8. In an interrogatory, Garcia-Sancho asked the government to identify "all requirements of PrimeCare to review and supervise any actions of [the resident and supervising physicians] from January 1, 2017 through November 14, 2019 pursuant to its status as a federal employee alleged by the United States of America." Pl.'s Mot. to Strike at 7; Pl.'s Mot to Strike Exh. A at 4. The government objected to the interrogatory as "not relevant to [the] scope question," pointed out that that the physicians were employees of Presence, and directed Garcia-Sancho to the contracts between Presence and PrimeCare. Pl.'s Mot. to Strike Exh. A at 4. Garcia-Sancho also asked the government to identify "all rules, regulations, procedures, contractual provisions or any other reason whereby PrimeCare was required to supervise [the resident and supervising physicians] pursuant to its status as a federal contractor and identify all documents containing the same." Pl.'s Mot. to Strike at 7; Pl.'s Mot. to Strike Exh. A at 5. The government again directed Garcia-Sancho to the same contracts between Presence and PrimeCare. Pl.'s Mot. to Strike Exh. A at 5.

Nothing in those interrogatory responses amounts to an admission that PrimeCare was acting outside the scope of federal employment. In the responses, the government simply posed relevancy objections and then pointed to the contracts between PrimeCare and Presence. By pointing to those contracts, the government again relied on the federal-law authority of PrimeCare to contract with Presence to provide healthcare services under the federal grant. The Court holds that the government did not admit that PrimeCare had no obligation to supervise the resident and supervising physicians pursuant to its status as a federal employee. *See* Fed. R. Civ. P. 33(b)(4).

In sum, then, the Court rejects the challenge to the United States' substitution into this case in lieu of PrimeCare, because PrimeCare was acting within the scope of federal employment.

### D. Misquotation

One final issue should be addressed. Garcia-Sancho's reply brief purports to quote *Lamagno*, 515 U.S. 417, for the following sentence: "Where conduct violates licensing laws or professional standards, it may be deemed outside the scope of employment, especially when federal law does not condone such violations." Pl.'s Reply at 3. The reply brief fails to provide a pinpoint-page citation for the page on which the quotation supposedly appears. *Id.* And the Court was unable to find the quoted sentence—or anything resembling it—in the cited case. On or before April 13, 2026, Garcia-Sancho's counsel shall file a Statement of Explanation explaining how this misstatement (if it is a misstatement, perhaps the Court is missing something) came to appear in the brief.

## IV. Conclusion

Garcia-Sancho's motion to strike the United States' scope of employment certification, R. 61, is denied. The parties shall file a status report proposing the next step of the litigation on or before April 13, 2026. The Statement of Explanation from the Plaintiff is due on the same date.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2026

16